# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Onishi-Chong*, 2020 IL App (2d) 180824

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KAREN I. ONISHI-CHONG, Petitioner-Appellant, and MICHAEL T. CHONG, Respondent-Appellee. |
| District & No. | Second District<br>Nos. 2-18-0824, 2-18-1015 cons. |
| Filed<br>Rehearing denied | February 20, 2020<br>March 18, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-D-1741; the Hon. Timothy J. McJoynt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert H. Lang and Audrey Mense, of Thompson Coburn LLP, of Chicago, and Todd D. Scalzo, of Mirabella, Kincaid, Frederick & Mirabella, LLC, of Wheaton, for appellant.<br><br>Steven N. Peskind, of Peskind Law Firm, of St. Charles, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Presiding Justice Birkett and Justice Zenoff concurred in the judgment and opinion. |

¶ 1 Petitioner, Karen I. Onishi-Chong, filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)) to set aside a marital settlement agreement (MSA) based on the alleged fraudulent concealment of a purported scheme to reduce the salary of respondent, Michael T. Chong, while their divorce was pending. During their marriage, respondent, who was a 50% owner of Voyage Financial Group, LLC (Voyage), equally split the profits with his partner, Thomas Royce. Petitioner alleged that, after the dissolution judgment, she discovered that respondent had misrepresented his actual income during the divorce proceedings and colluded with his partner to conceal his income to reduce maintenance and support. She sought to vacate the decree or alternatively to reset maintenance retroactively to the date of the dissolution judgment.

¶ 2 Respondent filed a motion for summary judgment to dismiss the section 2-1401 petition pursuant to section 2-1005 of the Code (*id.* § 2-1005), arguing that petitioner failed to exert due diligence and that the claim was barred under the doctrine of *res judicata*. The trial court granted respondent's motion for summary judgment, determining that, if petitioner had been lied to during the pretrial, the prove-up, or some time earlier, this was discoverable by petitioner if she chose to pursue it, but she did not. Petitioner appeals, raising several arguments. We affirm.

¶ 3 I. BACKGROUND

¶ 4 A. Divorce Proceeding

¶ 5 Petitioner filed for divorce in August 2012. The parties litigated their divorce for a period of approximately 22 months. Throughout the proceedings the parties engaged in full discovery. Petitioner served respondent with interrogatories and document requests for records related to his income, assets, and debts. Among those documents were records from Voyage, a financial planning firm. Petitioner needed these records to establish respondent's income for the purpose of maintenance and child support.[1] Respondent represented that he was earning $240,000 to $365,000 per year from 2012 through 2014.

¶ 6 On April 14, 2014, petitioner tendered to the trial court a pretrial memorandum, which we observe petitioner omitted from her statement of facts. Petitioner alleged in the memorandum that respondent "intentionally reduced his 2012 and 2013 income due to the pending divorce" and that she believed his annual income had been $518,235. Her conclusion was based on the following reasoning:

> "In 2006, Michael and his business partner Thomas Royce founded Voyage Financial Group, LLC, a company that assists Kraft Food employees [with] their retirement benefits after the employee has left Kraft. Michael and Thomas each own 50% of the business. Pursuant to Voyage's operating agreement, Michael and Thomas each received equal compensation from the company through 2011. *** Interestingly, in 2012, the same year in which Karen filed for divorce, Michael's income suddenly diverged from Thomas' income resulting in a difference of $25,798. *** Again in 2013

---

[1]At the time the judgment for divorce was entered, the amount of child support remained pending.

while the parties' divorce was still pending, Michael and Thomas' income differed by $196,669. Not only is Michael's income lower than Thomas' income, Michael's income is also lower than other financial managers at Voyage, even though Michael is a 50% owner of the company.

Despite repeated discovery requests, Michael has not been able to provide any corporation meeting minutes or intraoffice memorandum explaining this divergence in Michael and Thomas' income. Based on the divergence coinciding with the filing and pendency of her petition for dissolution, Karen believes Michael intentionally reduced his income in order to reduce maintenance and child support. Consequently, Karen believes Michael's 2013 income to be around $518,235.00 (assigning to Michael half of the difference between Michael and Thomas' 2013 income)."

¶ 7 Petitioner also sought half the value of respondent's ownership interest in Voyage. She noted that a joint valuation of Voyage had been conducted by Lee Gould of Lee Gould & Associates. He was a joint valuation expert, retained by both parties to value Voyage, who had provided the parties' attorneys a brief summary of his valuation calculations.

¶ 8 After engaging in full discovery, including the use of Gould, the parties settled the dissolution proceedings by agreement. Petitioner states in her appellate brief that relying on respondent's and Royce's representations, she "voluntarily entered into the marital settlement agreement [MSA] in April of 2014." In part, the parties' MSA requires respondent to pay petitioner unallocated family support of $12,500 per month for a period of 54 months, or $150,000 per year.

¶ 9 At the prove-up hearing on April 16, 2014, the following colloquy took place between respondent's attorney, Mark Farrow, and both parties:

"MR. FARROW: Based upon the discovery conducted, you are both satisfied that there has been a full and complete disclosure of income, assets, and liabilities; and as of today you are directing our office to conduct no further discovery in this case; is that correct?

PETITIONER: Yes.

RESPONDENT: Yes.

MR. FARROW: Is it your mutual intention to waive all claims of dissipation of assets, concealment of assets, and reimbursement of the marital estate; is that right?

PETITIONER: Yes.

RESPONDENT: Yes."

¶ 10 The terms of settlement were set forth at the prove-up on April 16, 2014. The trial court approved the MSA, which was later incorporated into the judgment of dissolution, entered on May 13, 2014. In subsequently denying petitioner's section 2-1401 petition, the court commented that the April 16, 2014, hearing addressed respondent's income and that the MSA was silent as to that issue.

¶ 11 The MSA provides, in relevant part, as follows:

"G. *** The parties represent that they have disclosed to each other all information with respect to their income, assets and debts. The parties acknowledge that each has been fully informed of and is conversant with the wealth, property, estate and income of the other and that each has been fully informed of his and her respective rights in the premises.

H. The parties further acknowledge their respective rights to conduct discovery depositions, valuations, request financial information from the other party by way of interrogatories, requests to admit, requests to produce documents, to subpoena witnesses to testify and to produce documents, and to have a full trial on the merits of this action. Each party acknowledges his or her respective express and voluntary waiver of his or her right to pursue additional discovery which has not yet been conducted in connection with this cause. Each party has directed his or her respective counsel to discontinue any additional discovery or asset valuations, and each party hereby stipulates that he or she is fully aware of the consequences of this decision."

## B. Section 2-1401 Proceeding

On May 10, 2016, petitioner filed a motion pursuant to section 2-1401, alleging that respondent secreted his actual income and conspired with Royce to shelter his income from the divorce. As stated, petitioner sought to vacate the divorce decree or alternatively to reset maintenance retroactively to the date of the divorce.[2]

Petitioner alleged that she was operating under the erroneous belief that respondent's gross income from his employment was approximately $240,000 per year. She claimed upon information and belief that, during the divorce proceedings, respondent was actually earning more income than he represented and that he was therefore "grossly" underpaying maintenance. Petitioner alleged that, immediately after the judgment, respondent began living well beyond the means of someone with an annual gross compensation of $240,000 but also paying $150,000 of annual maintenance. She alleged that respondent rented and furnished a 5400-square-foot home, began taking expensive trips, bought a number of expensive gifts for the children, was planning the marriage to a second wife with all the related expenses, and bought two new SUVs and a Ferrari. Petitioner alleged that she justifiably relied on respondent's misrepresentations, given the parties' discovery and respondent's status as a financial planner. Petitioner further alleged that on April 25, 2016, she demanded information from respondent related to his compensation, and, thereafter, he failed and refused to produce any information to her, which supported only an inference that respondent and Royce engaged in misconduct.

Petitioner claimed that respondent and Royce "trued up" (the True-Up Scheme) respondent's underreported compensation that he earned during the proceedings. Prior to 2012, Royce and respondent had split their Voyage earnings but, beginning in 2012 when petitioner filed for divorce, they diverted payment from respondent to Royce under the guise of an "origination-based" compensation system. She alleged that Royce and respondent used this system until the MSA was executed, at which point the structure flipped, and respondent began earning significantly more than Royce. Petitioner alleged that this flipped structure, which was contrary to respondent's pre-MSA representations to petitioner, Gould, and others, stayed in

---

[2]After petitioner filed a section 2-1401 petition, she filed a complaint at law in the Du Page County circuit court, seeking compensatory and punitive damages against respondent; his partner, Royce; and Voyage (No. 16-D-416). Defendants sought dismissal of the law division case. The trial court dismissed respondent with prejudice but dismissed Royce and Voyage without prejudice and stayed the proceeding until the section 2-1401 matter is resolved.

place until 2016, when petitioner filed her section 2-1401 petition, at which point respondent and Royce reverted to their 50/50 split. "In other words, upon information and belief, [respondent] and Royce increased [respondent's] annual compensation following the Judgment to more than he was entitled for those years to make up to [respondent] the amount that he was under paid preceding the Judgment." Petitioner argued that, when deposed about this True-Up Scheme in 2018, respondent abandoned the story that Royce and he told during the divorce—that Royce started to make more than respondent in 2012 because Royce originated more clients—and claimed that he and Royce were compensated based on the number of hours worked.

¶ 16 Petitioner noted that respondent's January 2014 answers to interrogatories represented to her that he was making $20,000 per month at that time, and at no point during the divorce proceedings did respondent amend or supplement those answers. She later learned, however, that Voyage's own records showed that respondent started making $32,000 per month in April 2014, the month the MSA was executed and a month before the entry of the judgment. In 2018, petitioner deposed respondent's divorce attorney, who testified that he did not know of the increase in respondent's compensation in April 2014 and that he would have amended respondent's answers to interrogatories had he known.

¶ 17 Petitioner further alleged that the True-Up Scheme was not the only way respondent and Royce defrauded her. First, respondent and Royce represented to her, Gould, and others during the divorce that Voyage's growth was declining. Petitioner claimed that this was untrue, as she discovered in 2017 and 2018. She stated that from 2012 to 2014, Voyage's gross revenues grew from $1.848 million to $2.6 million and both respondent and Royce projected strong growth for the foreseeable future. Second, because they were making so much more money through Voyage, respondent and Royce took advantage of a variety of highly questionable tax shelters to shield their growing income from petitioner, including investing in conservative easements and creating a sham corporation through which they funneled $210,000 to Royce's wife, even though she performed little to no work for Voyage.

¶ 18 Petitioner alleged that in 2014, at the time the parties were finalizing their divorce, the vast majority of the evidence proving respondent's fraud did not exist on paper, as respondent was still earning less than Royce consistent with their origination-based earnings system. Petitioner alleged that if any evidence of respondent's plans to flip the payment structure postdivorce existed at that time, respondent and Royce fraudulently concealed it. Petitioner claimed that she undertook "herculean efforts" to reveal the lie. She stated that the concealment forced her to depose not only respondent but also Royce, Royce's wife, Voyage employees, respondent's fiancée, Voyage's accountant, respondent's divorce attorney, and the representative of one of Voyage's business partners. Petitioner also served document requests on respondent, Royce, and Voyage, seeking relevant records dating back to 2012. They allegedly produced only four e-mails collectively, despite having been ordered to comply with petitioner's discovery. Petitioner alleged that she was forced to subpoena records from numerous third parties to gather information. Petitioner also alleged that she learned that respondent had wrongfully withheld financial projections regarding Voyage during the divorce, even though she and Gould specifically requested such documents prior to entering into the MSA.

¶ 19 Prior to filing the section 2-1401 petition, on April 25, 2016, petitioner also served an evidence preservation demand on respondent's attorney, who testified that he provided copies to respondent and Royce. However, respondent stated in his deposition that he "continually

deleted [his] emails" throughout the course of the litigation. Thus, petitioner alleges that throughout the divorce proceedings and the section 2-1401 proceedings, respondent and Royce had withheld, hid, and destroyed evidence. Petitioner filed a spoliation motion seeking redress for respondent's, Royce's, and Voyage's destruction and withholding of evidence.

¶ 20 In response to the section 2-1401 petition, respondent filed a combined motion to dismiss pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2016)), which the trial court denied. Respondent then filed a motion for summary judgment. Petitioner argued, *inter alia*, that the motion was premature in light of ongoing discovery.

¶ 21 In support of the motion for summary judgment, respondent noted that, "after two years of extensive discovery including approximately forty (40) subpoenas, dozens of hours of depositions, review of all economic transactions for [respondent], [Royce] and Voyage, and review of thousands of emails, [petitioner] can only advance speculative theories and innuendo and has presented no concrete evidence of any fraud." Respondent claimed that compensation at Voyage was based on contribution to the firm, which was investigated and discussed at length by petitioner, her attorneys, Gould, and petitioner's own expert prior to her accepting the settlement. Respondent pointed out that, in her April 10, 2018, deposition, petitioner reiterated that she had these suspicions before the divorce. He maintained that it was not a coincidence that his income decreased and his professional production and contribution suffered when his time and energy were consumed by an acrimonious divorce. He noted that both his and Royce's income have fluctuated in the past and would likely continue to do so into the future.

¶ 22 Arguing that there was simply no merit to prolonging the litigation, respondent noted that he agreed to pay $12,500 per month at the time of the divorce. Petitioner raised the same claim regarding respondent's and Royce's alleged scheme and sought to impute income to respondent at the time. He pointed out that petitioner is a licensed optometrist. If the court used the average of his and Royce's income for 2012 and 2013 (the years they diverged), respondent's income would have been $454,313 in 2012 and $469,886 in 2013. Further, averaging those two years ($462,099) and applying the current guidelines, the amount of the monthly maintenance would be $11,552 per month, nearly $1000 less than the amount respondent had agreed to pay at the time of the divorce. "And it would be far less if the court imputed $100,000, the sum a licensed Doctor of Optometry can earn."

¶ 23 On June 1, 2018, following argument, the trial court granted respondent summary judgment, concluding, *inter alia*, that "If Gould and [respondent] and Royce all lied to [petitioner] and her attorneys at the pretrial, at the prove-up, or at some earlier time, all this was discoverable by [petitioner] if she chose to pursue it. She did not. [Petitioner] proved up." The trial court did not rule on the spoliation motion, deeming it a separate issue.

¶ 24 Petitioner filed a motion to reconsider the trial court's grant of summary judgment. The court heard arguments on the motion to reconsider and the spoliation motion and denied both on September 18, 2018. Petitioner appealed the order granting summary judgment on October 9, 2018. She appealed the order denying her spoliation motion on December 10, 2018, six days after the trial court entered an order finding that its ruling on the motion was final and appealable under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). We consolidated the appeals for review.

¶ 25                                    II. ANALYSIS
¶ 26                            A. Section 2-1401 Petition
¶ 27        Petitioner appeals the trial court's grant of summary judgment in favor of respondent on her section 2-1401 petition, in which she challenges the validity of the MSA.

¶ 28        Judgments for dissolution of marriage are afforded the same degree of finality as judgments in any other proceeding, even where they incorporate an MSA. *King v. King*, 130 Ill. App. 3d 642, 654-55 (1985). In order to challenge the validity of an MSA beyond 30 days of the entry of judgment, a party must bring a petition pursuant to section 2-1401 or other method of postjudgment relief. *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 149-51 (1996). The purpose of a section 2-1401 petition is to bring before the court facts not appearing in the record, which, if known at the time of the entry of judgment, would have prevented its rendition. *In re Marriage of Broday*, 256 Ill. App. 3d 699, 705 (1993). "Courts apply this section with the aim of achieving justice, not to give the litigant 'a new opportunity to do that which should have been done in an earlier proceeding' or to relieve the litigant 'of the consequences of his mistake or negligence.' " *Id.* (quoting *In re Marriage of Travlos*, 218 Ill. App. 3d 1030, 1035 (1991)).

¶ 29        Section 2-1401 of the Code "authoriz[es] a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Section 2-1401 petitions must be "supported by affidavit or other appropriate showing for matters not of record." *Id.* "[A] section 2-1401 petition can present either a factual or legal challenge to a final judgment or order." *Id.*

¶ 30        Petitioner asserts that the trial court erred in granting respondent's summary judgment motion to dismiss her section 2-1401 petition and that our standard of review is *de novo*. Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). The trial court may grant summary judgment after considering "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construing that evidence in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). A defendant moving for summary judgment may meet its burden of production either by presenting evidence that, left unrebutted, would entitle it to judgment as a matter of law or by demonstrating that the plaintiff will be unable to prove an element of its cause of action. *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 994 (2005).

¶ 31        The supreme court has held that "the nature of the challenge presented in a section 2-1401 petition is critical because it dictates the proper standard of review on appeal." *Warren County Soil & Water Conservation District*, 2015 IL 117783, ¶ 31. In this case, petitioner's section 2-1401 petition was dismissed on the basis of summary judgment. Accordingly, because the dismissal was based on a legal challenge, we agree that our review is *de novo*. See *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 331 (2010) (Jorgensen, J., specially concurring) (citing *People v. Vincent*, 226 Ill. 2d 1, 18 (2007)).

¶ 32        We initially address petitioner's argument that the trial court erred in relying on two inadmissible documents. First, she argues that the pretrial memorandum was inadmissible as an offer of settlement. Respondent counters that merely because petitioner inserted a settlement demand in her memorandum, this would not contaminate the entire document. However, here the relevant portion of the memorandum regarding respondent's income was petitioner's attempt to establish the basic facts and theory of the case, not to make a demand for

settlement. As respondent points out, Du Page County Circuit Court Rule 15.18(c) compels litigants to include in their memoranda any suggestions for settlement. Du Page County Cir. Ct. R. 15.18(c). Petitioner's admission of her suspicions about respondent's income was not an offer to compromise. Rather, it was used to alert the trial court to the relevant contentions for trial and was in no way included as part of an offer of settlement.

¶ 33    Second, petitioner argues that the trial court erred by relying on the "settlement memorandum," as it was inadmissible evidence of a settlement at trial in violation of Illinois Rule of Evidence 408 (eff. Jan. 1, 2011). Respondent notes that, even assuming *arguendo* that the relevant statements found in petitioner's memorandum were "settlement offers," under the rule, they were still properly considered by the trial court. Rule of Evidence 408(a) states that such offers are inadmissible only when they are offered "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Ill. R. Evid. 408(a) (eff. Jan. 1, 2011). The statements were not offered to prove liability for or invalidity of a claim and did not involve a prior inconsistent statement. The court considered the statements to show that petitioner had knowledge of facts supporting the claims made in her section 2-1401 petition and did not act diligently in pursuing those claims prior to judgment.

¶ 34    The memorandum sets forth in detail the allegations that petitioner is reclaiming in her section 2-1401 petition. It shows that, from 2006 to 2011, the partners in Voyage split their compensation equally. It points out that the divorce was filed in 2012 and that, in 2012 and 2013, respondent's income was substantially lower than his partner's income. The memorandum states that petitioner believes at the time that respondent intentionally reduced his income to decrease his support obligations. This memorandum shows that petitioner had knowledge that there was a disparity in income but chose to settle without pressing the issue with further discovery or raising the issue at trial.

¶ 35    Petitioner relies on postjudgment evidence showing the True-Up Scheme. Respondent argues that petitioner cannot rely on postjudgment evidence to raise a section 2-1401 claim.

¶ 36    To be entitled to relief under section 2-1401 of the Code, "the petitioner must set forth specific factual allegations showing the existence of a meritorious claim, demonstrate due diligence in presenting the claim to the circuit court in the original action, and act with due diligence in filing the section 2-1401 petition." *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, ¶ 15. Section 2-1401 imposes upon the petitioner the burden of establishing her right to relief. *Id.* "To set aside a judgment based on newly discovered evidence, the petitioner must show the new evidence was not known to her at the time of the proceeding and could not have been discovered by the petitioner with the exercise of reasonable diligence." *Id.*

¶ 37    It is true that a section 2-1401 petition may not be based on events that occur subsequent to judgment. In this case, petitioner is raising a claim of prejudgment fraud, and the alleged evidence she presents simply supports her claim. This contention arguably has some support. See *People v. Howard*, 363 Ill. App. 3d 741, 747 (2006).

¶ 38    Although this evidence may be relevant to the allegation of prejudgment fraud, it does not change the circumstance that, before she entered into the MSA, petitioner had information supporting her claim of a scheme to reduce respondent's income. As the trial court stated in its ruling: "This is sort of the definition of no due diligence if these facts existed or were available before the prove-up and before the judgment. So, facts discovered after the entry, if they were available before the prove-up, that's not fair game for a [2-]1401 [petition]." While petitioner

presents evidence showing respondent's income had increased since the divorce, she had information that his income had decreased before the divorce. This prompted petitioner to claim in her pretrial memorandum that respondent was intentionally reporting less income to reduce his support obligation.

¶ 39     Petitioner argues that the due diligence requirement should be relaxed in circumstances of alleged fraud. She relies on *In re Marriage of Roepenack*, 2012 IL App (3d) 110198, *Nessler v. Nessler*, 387 Ill. App. 3d 1103 (2008), and *In re Marriage of Johnson*, 339 Ill. App. 3d 237 (2003), in support.

¶ 40     *Nessler* involved a tort claim for fraudulent inducement of the wife's execution of an MSA based on her lawyer-husband's fraudulent misrepresentations. *Nessler*, 387 Ill. App. 3d at 1104-05. *Nessler* did not address diligence and is, therefore, immaterial.

¶ 41     In *Roepenack*, the petitioner argued that the respondent was not diligent in discovering the value of the business and other assets and presenting this claim to the trial court in the original action. On appeal, the appellate court found the record supported the trial court's finding that the respondent acted with adequate diligence. Although due diligence had been satisfied, the appellate court commented that the rule could be relaxed, noting that "[w]hen justice and fairness require, a judgment may be vacated." *Roepenack*, 2012 IL App (3d) 110198, ¶ 40 (citing *In re Marriage of Hoppe*, 220 Ill. App. 3d 271 (1991)). The respondent was not represented by an attorney, as she could not afford one, she did no discovery, and she relied exclusively on the petitioner's representations of his income as a basis to settle the divorce. *Id.* ¶¶ 36-38. The appellate court emphasized that the petitioner testified in the original action to the accuracy of the admittedly inaccurate statement of income, which the court deemed a fraud on the respondent and on the court. *Id.* ¶ 40. Accordingly, the court affirmed the trial court's grant of the section 2-1401 petition to vacate the MSA.

¶ 42     Similarly, in *Johnson*, the respondent had no independent legal advice and did not seek any discovery before agreeing to settle the divorce. The MSA was one-sided, and neither the petitioner nor her attorney corrected the trial court's incomplete characterization of the separation agreement. Although there appeared to be no reason the respondent could not have acted with due diligence in having an actuarial analysis of his pension performed before the judgment of divorce was entered, we believed the circumstances warranted invoking the exception to relax the diligence requirement, as the MSA effectively left the respondent in penury. *Johnson*, 339 Ill. App. 3d at 243.

¶ 43     Respondent points out that the determinative factors for the relaxation of the due diligence requirement in both *Roepenack* and *Johnson* depended on access to legal advice, availability of discovery, and an understanding of the implication of the agreement. Here, unlike in *Roepenack* and *Johnson*, petitioner was well represented by a renowned and respected family law firm, she sought and obtained discovery, she relied on an independent forensic expert, and she raised her concerns about respondent's income prejudgment, but she voluntarily proved up and settled instead of pursuing her suspicions.

¶ 44     We find this case more closely resembles *Goldsmith*, 2011 IL App (1st) 093448, where the Appellate Court, First District, held that a petitioner's reliance on the opposing party's representations, in lieu of formal discovery, does not satisfy due diligence. At the prove-up hearing, the petitioner testified that her consent to the MSA was based on the respondent's representations regarding his holdings. *Id.* ¶ 6. She filed a section 2-1401 petition to vacate the judgment, claiming that despite the respondent's representation in the MSA that he had made

full disclosure of his assets, she discovered he failed to disclose nearly $2 million in additional assets. *Id.* ¶ 7.

To begin, the appellate court cited the well-settled principle that section 2-1401 "is not intended to give the litigant a new opportunity to do that which should have been done in an earlier proceeding or to relieve the litigant of the consequences of her mistake or negligence." *Id.* ¶ 14. It held that the petitioner could not meet the standard to set aside the judgment based on newly discovered evidence because she could not show the new evidence was not known to her at the time of the proceeding and could not have been discovered by her with the exercise of reasonable diligence. *Id.* ¶ 50. The court stated:

> "A representation and warranty of full disclosure in a marital settlement agreement, even when the full disclosure is confirmed by affidavit (albeit unsigned here) cannot be used as an escape hatch to avoid the consequences of failing to act diligently in the first instance by engaging in sufficient discovery, a proposition that has been long established in Illinois law. ' "A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations[,] he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentations." ' *Lagen v. Lagen*, 14 Ill. App. 3d 74, 81 (1973) (quoting *Dickinson v. Dickinson*, 305 Ill. 521, 527-28 (1922))." *Id.* ¶ 51.

Petitioner contends that she did conduct discovery and relied on respondent's statements to Gould, the business valuation expert, to show respondent was fraudulently concealing the scheme. Even after Gould made his report, petitioner submitted her pretrial memorandum, which showed that she did not accept respondent's explanation for the income disparity. More importantly, petitioner was not prevented from continuing discovery and going to trial. She clearly suspected at the pretrial in April 2014 that respondent was making more money. To argue on appeal that he was concealing more money than she knew is, as the trial court aptly stated, "disingenuous."

Petitioner also cites *Goldsmith*, wherein the court states, "[w]e emphasize that this case does not present a question of fraudulent concealment of assets." *Id.* ¶ 47. There is no difference between misrepresentation and fraudulent concealment under the facts of this particular case. Regardless, this case centers around respondent's representations to Gould regarding the basis for respondent's income fluctuations. Here, as the trial court pointed out, if respondent, Royce, and Gould "all lied to petitioner and her attorneys at pretrial, at the prove-up, or at some time earlier, this was discoverable by petitioner if she chose to pursue it." Petitioner was provided an adequate opportunity to determine the truth of her allegation, and she raised the issue in the divorce proceeding but opted to settle her case despite her concerns. Petitioner accepted the argument when she could have investigated the veracity of respondent's representations of his economic circumstances at the time. Petitioner also had the option of presenting evidence of respondent's decline in income at trial and requesting that the trial court impute income to respondent.

"Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community*

*Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). Here, the record reflects that petitioner did not exercise reasonable diligence in presenting her section 2-1401 claims to the trial court before entering into the MSA. Accordingly, we find no triable issue of fact and hold that respondent is entitled to judgment as a matter of law.

¶ 49                                    B. Spoliation Motion

¶ 50        Petitioner next argues that the trial court abused its discretion in denying her spoliation motion regarding respondent's deletion of his e-mails. The motion was filed on May 22, 2018. Petitioner brought this motion because she claimed the missing evidence would support her section 2-1401 petition, including the allegations of her own due diligence and respondent's fraud. The trial court essentially found that, although respondent deleted the e-mails, he did not destroy them because they remained on the computer. The court also noted that petitioner proceeded to argument on summary judgment without raising the issue of deficient discovery. In any event, we find this issue is moot because the motion pertains to the section 2-1401 petition and we have determined that petitioner's pretrial memorandum shows that she was not diligent in pursuing the section 2-1401 claims before entering into the MSA.

¶ 51                                     III. CONCLUSION

¶ 52        Based on the preceding, we affirm the judgment of the circuit court of Du Page County.

¶ 53        Affirmed.