2022 IL App (2d) 210439-U
No. 2-21-0439
Order filed May 19, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| SANDRA BATELLI, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-L-470 |
| | ) | |
| VILLAGE OF ADDISON, | ) | Honorable |
| | ) | Bryan S. Chapman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Bridges and Justice Birkett concurred in the judgment.

## ORDER

¶ 1    *Held*:   Summary judgment for defendant municipality was proper on plaintiff's complaint that defendant was negligent because of the raised sidewalk slab on which plaintiff tripped.  Defendant had no duty to guard against the danger.  The slab was an open and obvious hazard, as it was raised more than one inch above the adjacent slab, and nothing obstructed plaintiff's view of it as she walked.  Also, the danger from the slab did not justify the enormous burden of inspecting sidewalks regularly enough to prevent such defects.

¶ 2    Plaintiff, Sandra Batelli, appeals from an order of the circuit court of Du Page County entering summary judgment for defendant, the Village of Addison (Village), in her personal-injury lawsuit.  The trial court concluded that the Village was entitled to judgment as a matter of law because: (1) the hazardous condition on the Village's property that led to plaintiff's injury was

open and obvious and (2) the Village lacked constructive notice of the condition. We conclude that the condition at issue was open and obvious and that the Village had no duty to protect plaintiff from it. We therefore affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiff testified at her discovery deposition that, on the evening of July 29, 2019, she went for a walk with her friend, Angela Mastrolonardo. While walking on the sidewalk along Lake Street in Addison, plaintiff tripped over a raised sidewalk slab and fell, injuring herself. Plaintiff went back to the scene of the accident about a week later and observed the sidewalk slab that she tripped over. It was raised by about three inches. However, during her deposition, she was shown a photograph of the slab with a measuring stick next to it. She acknowledged that the photograph showed that the slab was raised by less than two inches.

¶ 5    Plaintiff testified that when she fell, she was looking forward because she and Mastrolonardo were about to cross the street. Plaintiff was looking straight ahead "[t]o make sure there wasn't [*sic*] cars going to be turning." The record establishes that the intersection they were about to cross was about 15 to 20 feet ahead of the location where plaintiff fell. Plaintiff was asked, "Was there anybody [*sic*] obstructing that raised sidewalk such as shadows, landscaping, debris, garbage, anything of that nature?" Plaintiff answered, "No." She acknowledged that, if she had been looking down, she would have been able to see the raised slab.

¶ 6    Mastrolonardo testified at her discovery deposition that she and plaintiff went for a walk on the evening of July 29, 2019. After plaintiff fell, Mastrolonardo noticed that the sidewalk was not level where the slabs met. Mastrolonardo prepared a verified statement in which she asserted that the deviation in the sidewalk was approximately two to three inches at the place where plaintiff fell. In contrast, she testified at her deposition that the displacement between the slabs was an inch

or less, but "you could totally see that it was uneven." She admitted that she never measured the displacement between the sidewalk slabs. She also testified that it was still light out when plaintiff fell and that Mastrolonardo had no difficulty seeing where she was going as she was walking along the sidewalk.

¶ 7    Rick Federighi testified at his discovery deposition that he was director of public works for the Village. The department of public works has eight divisions, including the street division, which is responsible for the maintenance of sidewalks. The Village is responsible for approximately 220,000 sidewalk squares and tries to replace about 1000 sidewalk squares each year. Divisions other than the street division will sometimes report hazardous conditions. Federighi testified that the sidewalk on which plaintiff fell was constructed in 2007 and was last inspected in 2012, at which time no defect was noted. Federighi acknowledged that, in March 2019, a motor vehicle struck a light pole located near where plaintiff fell. A crew visited the location to inspect the damage to the light pole. The crew was near the area where plaintiff fell.

¶ 8    The Village's written sidewalk inspection policy was submitted as an exhibit to the Village's summary judgment motion. The policy provided that, "[a]nnually, the street supervisor will schedule a team of employees to canvas [*sic*] a geographical area of the [V]illage with the goal that municipal walkways or parkways are inspected at a minimum of once every five years."

¶ 9    Ron Remus testified at his discovery deposition that he was the foreman of the Village's street division. Plaintiff advised the Village that she had tripped on the uneven sidewalk slab on Lake Street. On August 6, 2019, Remus repaired the defect using hot mix asphalt. In August of 2020, Remus removed the asphalt so that he could take measurements of the height of the raised slab. Remus took photographs that showed that the raised slab was approximately 1¼ inches higher than the adjacent slab.

¶ 10    The trial court found, as a matter of law, that the uneven slabs were an open and obvious condition that the Village had no duty to guard against.  The trial court also found no evidence that the Village had either actual or constructive notice of the defect in the sidewalk along Lake Street; therefore, the Village could not be held liable.  The trial court entered summary judgment for the Village, and this appeal followed.

¶ 11                                            II. ANALYSIS

¶ 12    Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). "The trial court may grant summary judgment after considering 'the pleadings, depositions, admissions, exhibits, and affidavits on file in the case' and construing that evidence in favor of the nonmoving party." *In re Marriage of Onishi-Chong*, 2020 IL App (2d) 180824, ¶ 30 (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)); 735 ILCS 5/2-1005(c) (West 2020).  "While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." *Purtill*, 111 Ill. 2d at 240. "Inferences may be drawn from undisputed facts [citation], but an issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989).  The trial court's order granting summary judgment is reviewed *de novo*. *Guns Save Life, Inc. v. Ali*, 2021 IL 126014, ¶ 14.

¶ 13    Plaintiff's complaint sounds in negligence.  "The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 294 (2000).

Traditionally, whether a duty exists depends on "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). In determining whether a duty exists, courts consider four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 14.

¶ 14   The duty of a local public entity, such as the Village, to guard against injuries resulting from hazardous conditions on its property is governed by section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3-102 (West 2020)). Section 3-102 provides, in pertinent part:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." *Id.*

The "open and obvious" rule provides a potential exception to this duty. The "open and obvious" rule generally provides that "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44, (2003).

¶ 15    In *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448 (1996), our supreme court explained:

> "In cases involving obvious and common conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition.  The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks."

" 'Obvious' means that 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Bruns*, 2014 IL 116998, ¶ 16 (quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)).  "Where there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law." *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 34.  The "open and obvious" rule has been applied to uneven pavement on sidewalks.  See *Bruns*; *Foy v. Village of La Grange*, 2020 IL App (1st) 191340.

¶ 16    Plaintiff argues that the raised slab that she tripped over was not an open and obvious danger.  She contends that "[t]he defect lies beneath the reasonable person's feet while they are walking in a busy commercial area."  Quoting *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 202 (2000), plaintiff contends that "the reasonable person is not charged with 'constantly looking downward,' nor should the reasonable person be charged with 'anticipating that an injury will result from walking normally.' "

¶ 17    The *Foy* court rejected a nearly identical argument.  In *Foy*, as here, the plaintiff tripped on a raised sidewalk slab. The plaintiff admitted at his deposition that if he had been looking down just before falling, he would have seen the defect in the sidewalk.  Like plaintiff here, the plaintiff

in *Foy* relied on *Buchaklian* in arguing that " 'no reasonable person would be looking straight down at the sidewalk while walking.' " *Foy*, 2020 IL App (1st) 191340, ¶ 24. The *Foy* court disagreed:

> "*Buchaklian* involved a person tripping over raised portions of a rubber floor mat, and this court held that the mat was not an open and obvious defect 'because of its size, the lack of significant color contrast between the defect and the surrounding mat, or merely the short time that a person has in which to discover the defect as he or she takes a few steps toward the mat.' [Citation.] Importantly, we held that it was the kind of situation that a reasonably prudent person would not anticipate. [Citation.] Although in that case we 'refuse[d] to hold that invitees *** are required to look constantly downward' [citation], it does not necessarily follow that any defect on the ground cannot be open and obvious. In contrast to raised portions of a rubber mat that blend in with the rest of the mat, a raised sidewalk slab causing a deviation is readily visible to a reasonably prudent pedestrian, even when not looking downward. Not to mention that sidewalk deviations are common and can be easily anticipated by the average pedestrian." *Foy*, 2020 IL App (1st) 191340, ¶ 24.

¶ 18    Plaintiff contends that Lake Street is a busy street and that when she fell, she was looking straight ahead because she was approaching an intersection and was preparing to cross the street. She claims she needed to look straight ahead for turning vehicles. However, when she fell, she was 15 to 20 feet from the intersection. A reasonably prudent pedestrian approaching the intersection from that distance could have glanced down periodically to scan the sidewalk for tripping hazards, while also maintaining a general awareness of motor vehicle traffic. At a distance of 15 to 20 feet from the intersection, plaintiff did not need to focus exclusively on motor vehicle

traffic. Presumably, upon reaching the intersection, plaintiff would have paused to assess the safety before crossing.

¶ 19   Plaintiff also points out that Mastrolonardo did not notice the raised slab until after plaintiff fell. According to plaintiff, this is evidence that the raised slab was not open and obvious. We disagree. "Whether a condition is open and obvious is an objective standard." *Foy*, 2020 IL App (1st) 191340, ¶ 21. Plaintiff points to no evidence of any objective condition preventing her from seeing the raised sidewalk slab. Indeed, she testified that there was nothing to obstruct her view of the raised slab. In her reply brief, plaintiff relies on *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14 (1992). There, a billboard painter was electrocuted when he came into contact with a power line that ran overhead 24 to 30 inches from the top of the sign. In rejecting the defendant's argument that the power line was an open and obvious hazard, our supreme court noted that other individuals who had worked on the sign had given deposition testimony that they were unaware of the presence of the power line. The court concluded that "[s]uch testimony presents a question of fact as to whether or not the danger was open and obvious." *Id.* at 27. Subsequent to *National Advertising Company*, however, our supreme court held (as previously noted) that "[w]here there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law." *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 34. There is no meaningful dispute about the physical nature of the hazard here. The record sufficiently establishes that there was nothing preventing Mastrolonardo or plaintiff from noticing the hazardous condition of the sidewalk. The uneven slab was raised by an inch or more and was not obscured by shadows or debris. Under these circumstances, Mastrolonardo's subjective unawareness of the hazard before plaintiff's accident does not give rise to a genuine issue of material fact.

¶ 20    In support of her argument that the defect in the sidewalk was not open and obvious, plaintiff further notes that a crew repairing a light pole near the accident did not notice the hazard. Again, because there is no meaningful dispute about the physical nature of the hazard at the time of the accident, the argument fails.

¶ 21    Our conclusion that the defect in the sidewalk was open and obvious does not necessarily foreclose us from finding that the Village owed a duty to plaintiff. See *Bruns*, 2014 IL 116998, ¶ 35; *Foy*, 2020 IL App (1st) 191340, ¶ 26. "We must still consider the traditional four factors of a duty analysis: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant." *Foy*, 2020 IL App (1st) 191340, ¶ 26. In *Foy*, the court observed that because a defendant is ordinarily not required to foresee injuries from open and obvious conditions, the first factor carries little weight. *Id.* ¶ 27. The second factor also carries little weight. A person who encounters an open and obvious hazard will presumably avoid the hazard, making the risk of injury low. *Id.*

¶ 22    The remaining factors are the burden of guarding against injuries from sidewalk defects and the consequences of placing the burden on the Village. Plaintiff contends that the burden would be slight because the Village already maintains a sidewalk inspection program. However, that program provides for inspection of a particular sidewalk as infrequently as once every five years. That is not often enough to effectively guard against injuries from defects in sidewalks. As observed in *Foy*:

> "It is well recognized that sidewalks settle, erode, form cracks, and have other types of disruptions to the surface over time. It is not possible for the Village to prevent tree roots and other forms of natural erosion from disrupting the many miles of sidewalks within its

borders. Requiring the Village to constantly inspect its sidewalks for possible sidewalk deviations would create a huge burden; the consequences of such a burden would apply to *all* the sidewalks in the Village. And '[t]he imposition of this burden is not justified given the open and obvious nature of the risk involved.' " (Emphasis in original.) *Id.* ¶ 28 (quoting *Bruns*, 2014 IL 116998, ¶ 37).

Plaintiff contends that the consequence of placing on the Village the burden of guarding against risks from sidewalk defects would be improved safety for pedestrians. Like the *Foy* court, however, we do not believe that benefit justifies the enormous burden of guarding against injuries from open and obvious sidewalk defects.

¶ 23 The Village argues that the "distraction exception" to the "open and obvious" rule applies here. "Even where a condition is open and obvious, a property owner will be found to owe a duty of care if it is reasonably foreseeable that the plaintiff's attention might be distracted so that she would not discover the obvious condition." *Prostran v. City of Chicago*, 349 Ill. App. 3d 81, 88 (2004). Plaintiff argues, in essence, that the traffic distracted her as she was preparing to cross an intersection. As already noted, the hazard was 15 to 20 feet from the intersection. It was not reasonably foreseeable that plaintiff would be so distracted at that location by traffic that she would be unable to identify an open and obvious hazard on the sidewalk.

¶ 24 Because we conclude that the condition that caused plaintiff's injury was open and obvious and that the Village had no duty to guard against it, we need not consider whether the Village had constructive notice of the condition. See *Foy*, 2020 IL App (1st) 191340, ¶ 30.

¶ 25                                     III. CONCLUSION

¶ 26 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 27 Affirmed.