(No. 34387.—

ROBERT LEE POLLARD, Appellant, *vs.* MABEL REBECCA POLLARD, Appellee.

*Opinion filed Nov. 20, 1957—Rehearing denied Jan. 20, 1958.*

442

THEODORE SHARF, of Chicago, for appellant.

WOLFF and WOLFF, of Chicago, (JOHN B. WOLFF, and OSCAR M. WOLFF, of counsel,) for appellee.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook County dismissing, for want of equity, plaintiff's complaint to set aside certain deeds from him to defendant, his former wife, or in the alternative, to impress a trust

upon the real estate conveyed. A freehold being involved, plaintiff appealed directly to this court.

Plaintiff and defendant were married in 1913. Within two years they accumulated savings of about $500 and applied this sum as the down payment on a contract to purchase a house in Gary for $3,500, with the balance payable at $25 per month. Defendant operated a rooming house in the property and plaintiff worked in a steel mill. All their income went into a single bank account which was used for the payment of taxes and expenses. Plaintiff enlisted in the Army in 1918 and was discharged in 1919. After he returned from the service, they moved to Chicago and rented the Gary property. In 1924 they entered into a contract to purchase real estate in Chicago for $10,000, with a down payment of $4,000 and the balance due in monthly payments. Both properties were purchased in their joint names. Defendant also managed a rooming house in the Chicago property.

Sometime after May, 1926, plaintiff deserted the defendant without cause other than a claimed incompatability. In September of that year, while the parties were separated, defendant sought out plaintiff for the purpose of having him deed the properties to her. On September 15, 1926, defendant discussed this matter with plaintiff in the presence of his sister. Plaintiff testified that defendant said that she did not think he was in his right mind and that he should be in an institution; that she would put him there if he did not sign the deeds; that she wanted him to come back and didn't think he knew what he was doing; and that if they didn't effect a reconciliation, she would "split it [the property] down the middle." From the plaintiff's abstract it appears that his sister substantiated his account of the conversation in its entirety. However, the additional abstract and the record disclose that the sister testified that defendant told plaintiff: "When we make it up, if we make up, we will sign, I will sign it half back to

you." Defendant denies these conversations but did testify that it was necessary to obtain deeds to the property in order to secure mortgages and carry on the business. Subsequent to this conversation, the parties and plaintiff's sister went to the offices of a lawyer selected by plaintiff where the deeds were prepared, signed and acknowledged.

Thereafter, plaintiff signed three mortgages with the defendant which, as far as the record indicates, were executed to refinance the original purchase of the property. It is undisputed that subsequent to their separation in 1926, plaintiff contributed nothing for defendant's support, or for taxes, payment of principal and interest on mortgages, and other expenses in connection with the property, for, as plaintiff put it, "I felt she had enough."

Defendant obtained a divorce from plaintiff in 1943, however, the record is bare concerning the terms of that decree. Plaintiff, on occasions either before or after the divorce, asked for a reconveyance of the Gary property and defendant refused.

Plaintiff contends in the alternative, that the deeds are void because made under the duress of defendant's threat to place him in a mental institution; that the deeds were executed pursuant to an oral trust that she would reconvey upon either a reconciliation or a permanent separation; or that the conveyances are presumptively fraudulent because of the fiduciary relationship between the parties.

At the outset, we agree with the chancellor and master below that the testimony in the record, taken most favorably to the plaintiff, does not justify setting the deeds aside on the ground of duress. The parties were not living together when the defendant allegedly threatened to place plaintiff in a mental institution; and his sister was present at the time. There is no evidence in the record to indicate that defendant was in any position of dominance over plaintiff. Subsequent to the alleged intimidation, plaintiff, along with defendant and his sister, went to a lawyer of his own choos-

ing and, as far as the record shows, voluntarily executed the conveyances. The entire record indicates that the alleged threat, if any, was more of a reproof of plaintiff's conduct than an earnest threat of an unlawful abuse of process. It lacked such compulsion as to render the defendant's execution of the deeds an involuntary act, and did not constitute duress. *Decker* v. *Decker,* 324 Ill. 457, 475; *Hintz* v. *Hintz,* 222 Ill. 248, 252 and 253; *Rendleman* v. *Rendleman,* 156 Ill. 568, 572 and 573.

We must now consider whether the facts of this case establish either an express, resulting or constructive trust. It is well settled that property voluntarily conveyed by a husband to a wife, without fraud or coercion, is presumed to be a gift, notwithstanding that the husband purchased the property with his own money, and the wife may hold such property against him. (*Baker* v. *Baker,* 412 Ill. 511; *Bowman* v. *Pettersen,* 410 Ill. 519; *Lutticke* v. *Lutticke,* 406 Ill. 181; *Moneta* v. *Hoinacki,* 394 Ill. 47; *Spina* v. *Spina,* 372 Ill. 50.) We have often said that this presumption can be overcome only by clear, convincing and unmistakable evidence that no gift was intended, (*Baker* v. *Baker,* 412 Ill. 511; *Lutticke* v. *Lutticke,* 406 Ill. 181; *Link* v. *Emrich,* 346 Ill. 238,) and that it is not to be frittered away by mere refinement. *Spina* v. *Spina,* 372 Ill. 50; *Kartun* v. *Kartun,* 347 Ill. 510; *Dodge* v. *Thomas,* 266 Ill. 76.

The chancellor and master found that there was no clear and convincing evidence that plaintiff did not intend to give the property to his wife. The conveyance was made in 1926 when real estate was depressed in value. Despite the conflict in the testimony, it cannot be denied that defendant operated these properties as rooming houses for many years, and paid all taxes and principal and interest on the mortgages, as well as other necessary expenses, thereby contributing substantially to their acquisition. She also added at least $800 to the down payments. When plaintiff deserted the defendant without cause he was still under

duty to support her. It would seem logical that he considered the transfer of the properties a satisfaction of this obligation, since he testified that he never sent her any money after the separation in 1926 because, "I felt she had enough." However, she had nothing but the properties here involved. The record is without evidence sufficient to rebut the presumption of gift. The pretension of a resulting trust is therefore not supported by the evidence.

The testimony of the alleged oral promise to reconvey half the property, not being in writing, cannot constitute an express trust of real estate. Ill. Rev. Stat. 1955, chap. 59, par. 9; *Murray* v. *Behrendt,* 399 Ill. 22.

There is no clear and convincing evidence that plaintiff was wrongly or fraudulently induced to convey the property by the alleged promise to reconvey. We cannot determine from plaintiff's evidence whether such promise was to reconvey only if there was a reconciliation, or only if there was none. Under either alternative, the parol evidence is equivocal, absolutely unconvincing, and does not meet the burden of proof necessary for a constructive trust. (*Wood* v. *Armstrong,* 401 Ill. 111.) Nor is there satisfactory evidence of a fiduciary relationship between the parties. Such a relationship does not arise from the marital status alone, but must be proved by facts and circumstances. (*Jerzyk* v. *Marciniak,* 10 Ill.2d 529; also cf. *Maley* v. *Burns,* 6 Ill.2d 11; *Moneta* v. *Hoinacki,* 394 Ill. 47.) After considering the facts of record, and particularly that the plaintiff deserted the defendant and refused to return to her, we conclude that the evidence is inadequate to prove a fiduciary relationship.

A review of the evidence convinces us that the findings below are in accord with the manifest weight of the evidence.

The decree of the trial court is accordingly affirmed.

*Decree affirmed.*