Filed 3/14/08     NO. 4-07-0220

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JILL D. NESSLER, n/k/a JILL D. EGIZII,  )  Appeal from
    Plaintiff-Appellant,              )  Circuit Court of
    v.                                )  Sangamon County
FREDERIC W. NESSLER,                     )  No. 05CH253
    Defendant-Appellee.               )
                            )  Honorable
                            )  Theodis P. Lewis,
                            )  Judge Presiding.
_____

JUSTICE COOK delivered the opinion of the court:

Plaintiff Jill D. Nessler, now known as Jill D. Egizii, brought an action for money damages proximately caused by defendant Frederic W. Nessler's alleged fraudulent inducement of her execution of a marital settlement agreement (MSA) and other ancillary documents. The agreement was incorporated in a judgment of dissolution. Defendant moved pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2006)) to dismiss plaintiff's action as an attack upon the judgment of dissolution in violation of sections 2-1203 (735 ILCS 5/2-1203 (West 2006)) and 2-1401 (735 ILCS 5/2-1401 (West 2006)) of the Code. The trial court granted defendant's motion. Plaintiff appeals. We reverse and remand.

I. BACKGROUND

Plaintiff alleged the following in her second amended complaint.

Defendant and plaintiff were married on January 16, 1983. The couple was married in and resided in Sangamon County.

During their marriage, defendant was a licensed attorney in Illinois and actively engaged in the practice of law. Plaintiff was not an attorney but worked at her husband's law firm. Plaintiff claimed she knew nothing about the investment and management of the couple's assets and allowed defendant to exercise absolute influence and control over all of their assets. During the marriage, the couple acquired substantial real and personal property and the acquisition of the property was at the direction and under the control of defendant.

In 1996, plaintiff spoke to defendant about a separation or divorce. At that time, plaintiff claimed she had no knowledge of her rights upon dissolution of their marriage, and she had no knowledge of the nature and extent of the parties' marital property. According to plaintiff, once she brought up separation or divorce, defendant began a plan to secure title, control, and sole benefit of all of the couple's marital assets in violation of her rights upon dissolution. To further his plan, defendant told plaintiff he still loved her and did not want to dissolve their marriage.

Plaintiff claimed she believed defendant still loved her, and based upon that belief she continued to trust him regarding his representations about the dissolution of the marriage and management of their joint assets. According to plaintiff, defendant made the following misrepresentations to her: (1) upon a dissolution of their marriage the court could and likely would place substantially all of their marital assets

in trust for their children; (2) since he had earned the money giving rise to the acquisition of the assets, he would be awarded all of the assets not placed in a trust for the parties' children; and (3) she would not receive any marital assets or income upon a dissolution of the parties' marriage. Defendant then told plaintiff he would be willing to enter into an agreement with her giving her one half of all of their property if she agreed to continue to live in a separate residence on the couple's marital property and not publicly disclose any change in their status as husband and wife in furtherance of his attempt to reconcile their marriage. Plaintiff agreed to defendant's proposal relying upon defendant's misrepresentations.

Defendant then engaged an attorney to prepare various documents that plaintiff claimed effectively denied her title to any of the couple's marital property upon the dissolution of their marriage. The documents were (1) the MSA, which deposited all of the couple's property into two trusts with plaintiff and defendant as trustees but with defendant maintaining absolute and exclusive control for his lifetime; (2) the Nessler living trust agreement, which named plaintiff and defendant trustees but which gave plaintiff no rights until defendant's death; (3) the Nessler children's trust, which named plaintiff and defendant as trustees but which gave plaintiff no interest of any kind; and (4) complaints for dissolution of marriage and ancillary documents captioned in various counties.

Defendant told plaintiff that the MSA provided for the

couple's common ownership of all of their marital assets as equal trustees and would divide the assets equally upon the failure of the parties to reconcile their marriage. Plaintiff claims defendant did not present the MSA to her until October 18, 1996, when he took her to the courthouse in Virginia, Illinois, to secure a judgment of dissolution. Defendant counters that the MSA shows that both parties appeared before a notary public on October 15, 1996, and signed the MSA.

Plaintiff stated she did not engage or retain counsel relative to the preparation or review of the MSA and trusts and signed the documents without the benefit of counsel. Plaintiff also did not have counsel at the court appearance for the dissolution. Despite plaintiff being the petitioner for the dissolution, she claimed defendant presented the judgment of dissolution of marriage (judgment) adopting the MSA. The judgment was entered the same day. Defendant then took plaintiff to Quincy, Illinois, and filed the judgment under seal in the circuit court of Adams County. Plaintiff claimed she never received a copy of the documents she signed or any of the documents relative to the court's order.

After the court appearance, the couple returned home and continued to live as husband and wife in the couple's marital residence. According to plaintiff, defendant concealed the true impact of the documents and judgment relative to their reconciliation. Defendant told plaintiff that the documents were of no practical effect by virtue of their immediate reconciliation and

- 4 -

that they remained married by virtue of the resumption of their marital relationship. Defendant prepared joint income-tax returns on behalf of the couple representing that they were still married for the years 1996, 1997, 1998, and 1999. Defendant presented the returns to plaintiff. Defendant also submitted documents to State agencies representing the couple's marriage existed after the judgment order had been entered. Defendant told plaintiff that in light of their reconciliation, the property acquired since their 1983 marriage remained their common property. Defendant did not prepare any documents transferring the marital property to either of the trusts referenced in the MSA or take any action to effectuate the terms of the MSA until October 4, 2004. Plaintiff represented that defendant knew that she mistakenly believed the following: (1) the effect of the documents she signed was the division of the parties' marital assets equally between the parties; (2) that by virtue of the parties' reconciliation said documents were of no force and effect; and (3) the parties continued to be married.

In 2000, defendant told plaintiff it was necessary to formally reaffirm their de facto marriage relationship. The couple was remarried in Tennessee on September 2, 2000.

In 2004, plaintiff advised defendant that she wanted to dissolve their marriage. Defendant told plaintiff that because of the documents she signed in 1996, they could divide assets equally, with each having full ownership and access to their share, by placing all of their assets in trusts jointly owned by

them.  Sometime in September 2004, defendant had his attorney prepare documents, including (1) a petition for declaration of invalidity of marriage; (2) appearance and consent; (3) judgment for declaration of invalidity of marriage; (4) four warranty deeds in trust conveying four parcels of property to plaintiff and defendant as trustees; and (3) three warranty deeds of trust conveying three parcels of property to plaintiff and defendant as trustees.  Defendant and his counsel presented the documents to plaintiff and defendant advised her she was obligated to sign to effectuate the equal division of their property.  On or about September 23, 2004, plaintiff signed the documents, including the deeds transferring title to various real properties comprising a portion of the parties' marital assets to irrevocable trusts designating plaintiff and defendant as trustees but giving defendant exclusive control.  Again, plaintiff did not engage counsel to represent her or review the documents.

On October 4, 2004, the trial court in Cass County declared the September 2, 2000, marriage invalid.

Sometime in 2004, plaintiff discovered the true nature of the documents she signed and that defendant's representations to induce her to sign were fraudulent.  Plaintiff filed suit on April 27, 2005.

Defendant adds that plaintiff filed the petition for dissolution on October 18, 1996.  Further, plaintiff originally filed a complaint for declaratory judgment on April 27, 2005, seeking the following:  (1) to declare the MSA and all deeds

- 6 -

executed under cover of said agreement null and void; (2) to direct defendant to account to plaintiff and the court of all disposition of marital property; and (3) in the alternative, award plaintiff damages in an amount equal to plaintiff's loss of marital property and/or maintenance proximately caused by the agreement executed by the plaintiff as a result of defendant's fraud.

Defendant filed a combined motion to dismiss under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2006)). Plaintiff then filed an amended complaint for accounting and damages. Count I sought an accounting for all assets comprising the parties' marital property as it existed on October 18, 1996, and the disposition of said property in any manner. Count II sought an accounting of all assets received as cotrustee of the trusts and disposition of all said assets. Count III was an action based on fraud seeking that defendant be ordered to account to her and the court on all of the parties' marital assets and all disposition of said property and award plaintiff damages in an amount equal to plaintiff's loss of marital property and/or maintenance proximately caused by the MSA executed by plaintiff as a result of defendant's fraud.

Defendant responded to the amended complaint with a motion to dismiss and a motion for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) for plaintiff's false pleadings. Attached to the motion for sanctions was the transcript of the 1996 dissolution of marriage proceedings. The transcript

showed plaintiff told the court that she talked to an attorney and he reviewed all the paperwork, she was paying her own attorney fees, she and her attorney read through the division of property, she understood that defendant was representing his own interests and she had her own interests, she reaffirmed she sought legal counsel, and she stated she was clear on the MSA.

The trial court dismissed all three counts of the amended complaint holding that Pollard v. Pollard, 12 Ill. 2d 441, 147 N.E.2d 66 (1957), made it clear that a fiduciary relationship does not exist from the mere fact of a marriage alone. The court went on to note that no authority existed that a fiduciary relationship was established where the parties were involved in dissolution proceedings, and the court noted that once the parties became involved in adversary proceedings, it was inconsistent that a fiduciary relationship could have been created. Because the complaint alleged a fiduciary relationship because of the marital relationship, the complaint was insufficient at law.

Plaintiff filed the second amended complaint on June 22, 2006, alleging a breach of fiduciary duty and fraud, asking for an order directing defendant to account for all marital assets in existence as of October 18, 1996, and asking that the court award defendant damages equal to her interest in the property. Defendant filed a motion to dismiss under section 2-619 of the Code (735 ILCS 5/2-619 (West 2006)) alleging that the complaint was an attempt to collaterally attack the judgment for

dissolution of marriage and the complaint was not filed in the judgment for dissolution of marriage proceedings within the time frame required by law under sections 2-1203 or 2-1401 of the Code (735 ILCS 5/2-1203, 2-1401 (West 2006)).

On February 21, 2007, the trial court ruled that the second amended complaint was a reiteration of allegations in prior complaints and that there was no independent cause of action available to plaintiff outside the parameters of section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2006)).  The trial court entered final judgment against plaintiff upon defendant's section 2-619 motion (735 ILCS 5/2-619 (West 2006)), finding that an MSA induced by fraud cannot sustain a separate tort action for money damages and the only available remedy to plaintiff was to attack the judgment of dissolution of marriage.  This appeal followed.

## II. ANALYSIS

Plaintiff argues the trial court erred in finding that no independent tort action seeking money damages for defendant's fraudulent inducement of an MSA exists as a matter of law. Defendant responds that the court was correct that no independent tort action for fraud exists between former spouses in a dissolution of marriage proceeding in Illinois.

Plaintiff claims she is not attacking the judgment of dissolution because her complaint is predicated upon the MSA underlying the judgment and by extension based upon the judgment itself.  Plaintiff's tort action affirms the existence of the MSA

- 9 -

and judgment entered therein and seeks money damages proximately caused by the fraudulently induced MSA and judgment adopting it. According to plaintiff, where fraud induces a contract, the defrauded party may elect one of two remedies: (1) rescind the contract or (2) accept the contract and pursue a cause of action in tort for damages. Plaintiff elected to accept the contract induced by defendant's fraud and the judgment of dissolution adopting it and sue in tort on a fraud theory for money damages she proximately sustained by virtue of the MSA. Because plaintiff did not discover the fraud until 2004, section 13-215 of the Code (735 ILCS 5/13-215 (West 2006)) applied, allowing her to commence her suit at any time within five years after she discovered her cause of action.

Defendant argues once the parties to a dissolution secure a final judgment for the dissolution of the marriage and that judgment incorporates the MSA, the parties' only redress for allegations of wrongdoing connected to the MSA is by an attack on the final judgment under section 2-1203 or 2-1401 of the Code (735 ILCS 5/2-1203, 2-1401 (West 2006)).

Defendant attacked plaintiff's petition through a section 2-619 motion (735 ILCS 5/2-619 (West 2006)). A section 2-619 motion "admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matter apparent on the face of the complaint or established by external submissions which defeat the action." <u>Crusius ex rel. Taxpayers of the State of Illinois v. Illinois Gaming Board</u>, 348 Ill. App. 3d 44, 48,

807 N.E.2d 1207, 1212 (2004).

The "affirmative matter" defendant raises is that plaintiff's cause of action is actually an attack on the judgment of dissolution, was not filed in the dissolution of marriage proceedings, and was not filed within the time frame required by section 2-1203, 30 days after the entry of the final judgment, or section 2-1401, within two years from the date of the entry of the dissolution judgment. Defendant's section 2-619 motion does not dispute the elements of fraud in plaintiff's second amended complaint.

Because parties to a divorce have a cause of action if they are fraudulently induced to enter an MSA and because plaintiff has alleged fraudulent inducement in entering the MSA, we find that she has a cause of action and the trial court must hear the parties' evidence to decide whether the evidence is sufficient to grant the relief requested.

In the context of a section 2-619 motion, this court must accept as true all well-pled facts and all reasonable inferences from those facts as established in plaintiff's complaint. Crusius, 348 Ill. App. 3d at 48, 807 N.E.2d at 1212. Plaintiff alleged that she was fraudulently induced to enter into the MSA that defendant presented to her. A party to a divorce who signs an MSA and subsequently proves that he or she was fraudulently induced to sign the MSA has a remedy. See In re Marriage of O'Brien, 247 Ill. App. 3d 745, 750, 617 N.E.2d 873, 876 (1993) ("A party contending fraudulent inducement in the

making of a property settlement agreement which is incorporated into a decree of dissolution may properly obtain relief pursuant to section 2-1401"); In re Marriage of Hawkins, 106 Ill. App. 3d 68, 70-71, 435 N.E.2d 786, 788 (1982) ("a settlement agreement procured by fraud, coercion, or one that is contrary to any rule of law, public policy, or morals, will be set aside and vacated").

If a party is fraudulently induced to enter an MSA but does not discover the fraud until the expiration of the two-year statute of limitations in section 2-1401, the party is not without a remedy as the limitations period is tolled during the time that the grounds for relief are fraudulently concealed. In re Marriage of Morreale, 351 Ill. App. 3d 238, 241, 813 N.E.2d 313, 317 (2004).

Assuming plaintiff's allegations are true, as we must at this stage of the proceedings, she may bring an action that she was fraudulently induced to sign the MSA. Even the passing of 8 1/2 years from the entry of the 1996 judgment of dissolution would not bar a section 2-1401 petition if she shows evidence of fraudulent concealment. See In re Marriage of Halas, 173 Ill. App. 3d 218, 223-24, 527 N.E.2d 474, 478 (1988). Also, we are not convinced that the statute of limitations began to run in 1996 when the judgment of dissolution was entered because the couple remarried in 2000 and the second marriage was declared invalid in 2004 when the trusts, the subjects of the MSA, were funded for the first time. This leaves open the question as to

what effect the remarriage had on the unfunded MSA and what effect the declaration of invalid marriage has on the then-funded MSA.  See In re Marriage of Parks, 258 Ill. App. 3d 479, 484, 630 N.E.2d 509, 513 (1994) (remarriage of the parties renders a prior divorce decree unenforceable to the extent the judgment was unexecuted or incomplete).  Defendant has not shown that the statute of limitations definitively bars plaintiff's fraud claim.

As plaintiff's allegations of fraud support a cause of action, the trial court erred in dismissing her petition under section 2-619.  Expiration of a statute of limitations is properly raised under section 2-619, but the allegations of fraud here are sufficient to toll the running of the statute.  A complaint should not be dismissed for failure to state a cause of action under section 2-615 unless "it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief."  City of North Chicago v. North Chicago News, Inc., 106 Ill. App. 3d 587, 594, 435 N.E.2d 887, 892 (1982); see also In re Marriage of Hoppe, 220 Ill. App. 3d 271, 285, 580 N.E.2d 1186, 1195 (1991) ("A motion to dismiss should not be granted unless it clearly appears that no set of facts could ever be proved that would entitle the petitioner to recover").  "A pleading alleging fraud should not be dismissed on its face if the allegations contained therein establish one person made a false promise as part of an overall scheme to defraud, and another was induced to act to her detriment."  In re Marriage of Fricke, 174 Ill. App. 3d 191, 195, 528 N.E.2d 370,

372-73 (1988); see also <u>Harris v. Harris</u>, 45 Ill. App. 3d 820, 825, 360 N.E.2d 113, 117-18 (1977) (defendant wife's allegations "although unartful, when combined with the claim that [wife's] trust in her husband and his implied threat of nonpayment of legal fees induced the defendant not to retain her own counsel, are sufficient to allow defendant to present testimony and evidence in support of the amended petition so that questions of whether [husband] was guilty of fraud and coercion which induced the defendant to enter into an inequitable martial settlement agreement can be resolved by the proofs").

We note that we are not convinced that a fiduciary duty could not exist according to plaintiff's allegations.  This is not a case of a divorcing husband and wife on level footing.  In this case, defendant husband is an attorney and plaintiff wife is not.  Plaintiff alleges defendant advised her regarding Illinois divorce laws.  Defendant clearly knew his wife was not an attorney and might have known that she would trust his legal advice. While a marital relationship alone may not establish a fiduciary relationship, a fiduciary relationship may arise in a marital relationship as the result of special circumstances of the couple's relationship, where one spouse places trust in the other so that the latter gains superiority and influence over the former.  See generally <u>Gonzalzles v. American Express Credit Corp.</u>, 315 Ill. App. 3d 199, 210, 733 N.E.2d 345, 353-54 (2000) (discussing when a fiduciary relationship exists generally).  An attorney who is asked to represent both parties to effect an

- 14 -

"agreed" settlement in a dissolution of marriage case has an obligation to both parties. "Even the attorney who undertakes his own divorce can encounter liability problems." 2 R. Mallen & J. Smith, Legal Malpractice §22.1, at 330 (3d ed. 1989), citing Anderson v. Anderson, 399 N.E.2d 391 (Ind. App. 1979). Under the facts and circumstances of this case, plaintiff may be able to establish a fiduciary relationship.

Plaintiff's complaint, while perhaps not well pled, should not have been dismissed based on a section 2-619 motion as her allegations establish a cause of action for fraud. We remand for further proceedings to determine whether defendant fraudulently induced plaintiff to enter into the MSA and, if so, what relief will appropriately compensate plaintiff. We express no opinion as to the merits of the parties' claim.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded with directions.

McCULLOUGH and KNECHT, JJ., concur.