2020 IL App (2d) 190448-U
Nos. 2-19-0448
Order filed October 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23(c)(2) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KAREN I. ONISHI-CHONG, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16 L 416 |
| | ) | |
| MICHAEL T. CHONG, THOMAS E. | ) | |
| ROYCE, and VOYAGE FINANCIAL | ) | |
| GROUP, LLC, | ) | Honorable |
| | ) | Dorothy French Mallen, |
| Defendants-Appellees | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Birkett and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: We find the trial court correctly applied the doctrine of *res judicata* in dismissing all the counts of plaintiff's second amended complaint on defendants' section 2-619 motion. Based on our finding, we need not address whether the trial court properly dismissed the second amended complaint on grounds of collateral estoppel or waiver, or whether plaintiff pleaded sufficient facts to survive a section 2-615 motion to dismiss. On the basis of *res judicata* we find that the trial court did not abuse its discretion in denying plaintiff leave to supplement her complaint with the additional counts for spoliation of evidence, unjust enrichment, and fraudulent conveyance. Affirmed.

¶ 2    Plaintiff, Karen I. Onishi-Chong, appeals the dismissal of her 10-count second amended complaint against defendants, Michael T. Chong, Thomas E. Royce, and Voyage Financial Group,

LLC (Voyage), pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2016)). She also appeals the trial court's denial of her motion to supplement the second amended complaint with counts for spoliation of evidence, unjust enrichment, and fraudulent conveyance. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       To better understand this appeal, it is necessary to recite some background facts regarding Karen's and Michael's related divorce case and Karen's section 2-1401 petition to vacate the divorce decree or, alternatively, to reset maintenance retroactively to the date of the divorce.

¶ 5                                      A. Divorce

¶ 6       On August 15, 2012, Karen filed for dissolution of marriage from Michael. During their marriage, Michael, who was a 50% owner of Voyage, a financial services consulting firm, equally split the profits with his partner, Royce. Prior to entering into the marital settlement agreement (MSA), Karen engaged in discovery, serving matrimonial interrogatories and a request for production of documents on Michael. Karen served Michael with interrogatories and document requests for records related to his income, assets, and debts, including records from Voyage. Karen used these records to establish Michael's income for the purpose of maintenance and child support. Michael represented that he earned $240,000 to $365,000 per year from 2012 through 2014.

¶ 7       Karen received copies of the Voyage partnership agreement, operating agreement, profit and loss statements, general ledgers, commission summaries, and calculations from 2009 to 2013. Karen served multiple subpoenas for records to Michael, Royce, and Voyage, among others. Karen also served a records subpoena on Lee Gould, who had conducted a valuation of Voyage at the joint request of Karen and Michael.

¶ 8    After the parties conducted discovery, they each submitted a pretrial memorandum to the trial court. In her April 14, 2014, memorandum, Karen alleged that Michael "intentionally reduced his 2012 and 2013 income due to the pending divorce" and stated that she believed his annual income had been $518,235. Her conclusion was set forth in the memorandum as follows:

"In 2006, Michael and his business partner Thomas Royce founded Voyage *** . Michael and [Royce] each own 50% of the business. Pursuant to Voyage's operating agreement, Michael and [Royce] each received equal compensation from the company through 2011. * * * Interestingly, in 2012, the same year in which Karen filed for divorce, Michael's income suddenly diverged from [Royce's] income resulting in a difference of $25,798. * * * Again in 2013, while the parties' divorce was still pending, Michael and [Royce's] income differed by $196,669. Not only is Michael's income lower than [Royce's] income, Michael's income is also lower than other financial managers at Voyage, even though Michael is a 50% owner of the company.

Despite repeated discovery requests, Michael has not been able to provide any corporation meeting minutes or intraoffice memorandum explaining this divergence in Michael and [Royce's] income. Based on the divergence coinciding with the filing and pendency of her petition for dissolution, Karen believes Michael intentionally reduced his income in order to reduce maintenance and child support. Consequently, Karen believes Michael's 2013 income to be around $518,235.00 (assigning to Michael half of the difference between Michael and [Royce's] 2013 income)."

¶ 9    Before entering into the settlement, Karen also sought half the value of Michael's ownership interest in Voyage. She noted that a joint valuation of Voyage had been conducted by Gould, who had provided the parties' attorneys a brief summary of his valuation calculations.

¶ 10     Notwithstanding her concerns about this manipulation, Karen and Michael entered into an MSA in April 2014.  In part, the parties' MSA requires Michael to pay Karen unallocated family support of $12,500 per month for a period of 54 months, or $150,000 per year.

¶ 11     Further, at the prove-up hearing, Karen agreed that, based upon the discovery conducted, she was satisfied that there had been a full and complete disclosure of income, assets, and liabilities, and that, as of that day, she was directing her attorneys to conduct no further discovery.  She further acknowledged that it was her intention to waive all claims of dissipation of assets, concealment of assets, and reimbursement of the marital estate.  The judgment for dissolution incorporating the parties' MSA was entered on May 13, 2014.

¶ 12     In the MSA, both Karen and Michael represented that they had disclosed to each other all information with respect to their income, assets, and debts.  They acknowledged that each had been fully informed of and was conversant with the wealth, property, estate, and income of the other and that each had been fully informed of his or her respective rights in the premises.  Regarding discovery, the MSA states that "[e]ach party acknowledges his or her respective express and voluntary waiver of his or her right to pursue additional discovery which has not yet been conducted in connection with this cause.  Each party has directed his or her respective counsel to discontinue any additional discovery or asset valuations and each party hereby stipulates that he or she is fully aware of the consequences of this decision."

¶ 13     The MSA further provides:

> "Without any collusion as to the proceedings between the parties, but without prejudice to any right of action for dissolution that either party may have, the parties consider it in their best interest to settle between themselves the question of maintenance, and to forever, finally and fully settle and adjust their respective rights to the property of

the parties and any and all other rights growing out of the marital or other relationship now or previously existing between them, and to fully and finally settle any rights which either of them now has or may hereafter have or claim to have against the other, and all rights of every kind, nature and description which either of them now has or may hereafter have or claim to have against the other, or in or to any property of the other, of every kind, nature and description, whether real, personal or mixed, now owned or which may hereafter be acquired by either of them or any rights or claims in and to the estate of the other."

¶ 14                              B. Post-Divorce Proceedings

¶ 15                              1. The Section 2-1401 Petition

¶ 16    On May 10, 2016, Karen filed a section 2-1401 petition (735 ILCS 5/2-1401 (West 2016)) to set aside the MSA or, alternatively, to reset maintenance retroactively to the date of the divorce. In general, Karen alleged that Michael defrauded her by conspiring with Royce to intentionally underreport Michael's actual income while the divorce was pending in order to reduce maintenance and child support.

¶ 17    On March 12, 2018, Michael filed a motion for summary judgment to dismiss the petition pursuant to section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2018)). Before the hearing on the motion took place, Karen filed a motion to redress spoliation of evidence and related discovery violations. The court heard the argument on the motion for summary judgment first, in which Michael argued that Karen failed to exert due diligence (see 735 ILCS 5/2-1401(a) (West 2018); *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)) and that her claim should be barred under the doctrine of *res judicata.* Michael argued that Karen had made this same claim to the divorce court, but she nevertheless accepted a settlement resolving the case. On June 1, 2018, the trial court granted Michael's motion for summary judgment finding that, if Karen

had been lied to during the pretrial, the prove-up, or some time earlier, all this was discoverable by her if she had chosen to pursue it, which she did not. Thus, the trial court granted Michael summary judgment because Karen had knowledge of facts supporting the claims made in her section 2-1401 petition and did not exercise due diligence in pursuing those claims in the divorce action prior to the judgment.

¶ 18    On June 26, 2018, Karen filed a motion to reconsider the summary judgment. The court heard the motion along with the previously filed motion to redress spoliation regarding Michael's deleted e-mails. On September 18, 2018, the trial court denied the motion to reconsider the summary judgment. The court also denied the motion to redress spoliation, finding that the deleted e-mails were not destroyed because they remained on the computer. Karen appealed the dismissal of her petition, which was pending on appeal at the time the trial court in the present action addressed Karen's second amended complaint.[1]

¶ 19                                2. The Present Action

¶ 20    Karen filed the present action on the same day that she filed the section 2-1401 petition to set aside the MSA. In the instant action, however, Karen not only sued Michael, but also Royce and Voyage, claiming that they engaged in a scheme to deflate Michael's earnings during the

---

[1] On February 20, 2020, we affirmed the order granting Michael's summary judgment motion to dismiss the section 2-1401 petition on grounds that Karen failed to exercise reasonable diligence in presenting her motion for relief from judgment before entering into the MSA. *In re Marriage of Onishi-Chong v. Chong*, 2020 IL App (2d) 180824, ¶¶ 48, 49 (PLA denied, No. 125941 (Sept. 30, 2020)).

pendency of her divorce so as to wrongfully decrease Karen's maintenance award, whereafter they made up for the underpayments.

¶ 21    In the initial six-count complaint, Karen alleged the following: (1) fraudulent inducement against Michael (count I); (2) fraudulent concealment against Michael (count II); (3) breach of the MSA against Michael (count III); (4) civil conspiracy against Michael and Royce (count IV); (5) aiding and abetting against Royce (count V); and (6) *respondeat superior* against Voyage (count VI).  On January 10, 2017, the trial court dismissed with prejudice counts I through IV against Michael based on *res judicata* pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)).  The court also dismissed counts IV, V, and VI pleaded against Royce and Voyage without prejudice, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)), with leave to replead, and the court stayed the case pending resolution of the section 2-1401 petition.

¶ 22    On November 15, 2017, the trial court granted Karen leave to file her first amended complaint, which included the dismissed claims against Michael for appellate review.  Otherwise, the court gave Royce and Voyage leave to file their motion to dismiss but stayed the case pending the outcome of the section 2-1401 petition.  Following the ruling on the section 2-1401 petition, the trial court lifted the stay and subsequently granted Karen leave to file a second amended complaint.

¶ 23    Prior to filing her second amended complaint, Karen requested leave to supplement it with the following three counts: (1) spoliation of evidence against all defendants, including Michael; (2) unjust enrichment against Royce and Voyage; and (3) fraudulent conveyance against Royce and Voyage.  The trial court denied Karen's request to supplement the second amended complaint, finding that none of the proposed amendments would cure the defective pleadings under the *Loyola*

guidelines as they failed to state cognizable claims upon which relief could be granted. See *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992); *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004) (if the proposed amendment does not state a cognizable claim, courts of review will often not proceed with further analysis).

¶ 24    Thereafter, on December 14, 2018, Karen filed the following second amended complaint: (1) counts I-IV, repleading the dismissed counts against Michael for appellate review; (2) count V, alleging fraudulent misrepresentation against Royce; (3) count VI, alleging negligent misrepresentation against Royce; (4) count VII, alleging fraudulent concealment against Royce; (5) count VIII, alleging civil conspiracy against Royce; (6) count IX, alleging aiding and abetting against Royce; and (7) count X, alleging *respondeat superior* against Voyage.

¶ 25    In general, Karen's second amended complaint alleged that Royce and Michael intentionally misrepresented to Karen that Michael made less during the pendency of the divorce proceedings in order to reduce his maintenance and child support. More specifically, Karen alleged that the numbers clearly demonstrated how Michael and Royce, through Voyage, purposely underpaid Michael when they were going through the divorce and then overpaid Michael immediately thereafter to make up for these underpayments to Michael, which Karen termed the "True-Up Scheme." Karen alleged that the True-Up Scheme was a continuing, secretive event that began at the time of the divorce and continued at least through the filing of the present case and the section 2-1401 petition. Karen alleged that, during the divorce proceedings, Voyage, at Michael and Royce's direction, grossly underpaid Michael in relation to Royce.

¶ 26    The complaint further alleged that prior to the judgment of dissolution, defendants' explanation to Karen and others during the discovery process was that Michael began to make less because Royce originated more clients for Voyage. When Karen filed her petition to vacate the

dissolution judgment, Voyage was in the process of "truing up" Michael for the underpaid compensation he received during the divorce, by which the income disparity suddenly flipped to grossly favor Michael over Royce. After the dissolution judgment, Karen alleged that defendants' explanation changed. Michael abandoned the story that Royce and he told during the divorce, *i.e.*, that Royce started to make more than Michael in 2012 because Royce originated more clients. The new explanation provided by Michael was that Michael and Royce were being compensated based on the number of hours worked. Karen alleged that, at his March 2018 discovery deposition on the section 2-1401 petition, Michael testified under oath that Voyage paid him less during the divorce proceedings not because he originated fewer clients, but because the divorce caused him to work less at Voyage. Yet Michael also testified that he spent nearly as much time at Voyage's office during the divorce as he did before or after. Michael testified at the March 2018 deposition that Royce made less after the judgment because Royce happened to work less at Voyage after the judgment due to personal commitments, such as bowling, despite that Royce still originated most of Voyage's clients. Karen alleged that, at his discovery deposition on the section 2-1401 petition, Royce's testimony did not corroborate Michael's new explanation as to why Royce suddenly started working less at Voyage after the dissolution judgment.

¶ 27    On January 22, 2019, defendants filed a motion to dismiss all counts under section 2-619(a)(4) and (9) on grounds of *res judicata*, collateral estoppel, and waiver as a result of Karen choosing to settle her divorce case despite claims of uncertainty about Michael's income at the time of the divorce. Defendants asserted that the only forum to challenge the amount of maintenance she received was in the divorce court, and that Karen's attempts to seek maintenance from Royce and Voyage through the present tort action was impermissible. Additionally, defendants alternatively moved to dismiss all counts (counts V through X) under section 2-615 on

2020 IL App (2d) 190448-U

the basis that Karen failed to properly plead sufficient facts to sustain the various causes of action as enumerated in each separate count. 735 ILCS 5/2-615, 619 (West 2016).

¶ 28    The court dismissed counts V through X pursuant to section 2-619, finding that the same core facts alleged in Karen's complaint had previously been litigated in the section 2-1401 petition and that all counts were barred by *res judicata* and collateral estoppel. The court further found that the section 2-1401 petition was the sole remedy to attack the judgment and the court accepted that Karen knowingly waived "all rights to have *** maintenance reassessed." The court also dismissed counts V through X pursuant to section 2-615, agreeing that they failed to state claims for which relief could be granted.

¶ 29    Karen timely appeals.

¶ 30                                    II. ANALYSIS

¶ 31                                    A. *Res Judicata*

¶ 32    On appeal, Karen first contends that neither *res judicata* nor collateral estoppel bars her current claims against defendants. The trial court dismissed all claims pursuant to both section 2-619 and section 2-615. In reviewing the dismissal of a complaint under either section 2-615 or section 2-619, we apply a *de novo* standard of review. See *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006); see also *Curtis v. Lofy*, 394 Ill. App. 3d 170, 177 (2009) (applying *de novo* review to whether a claim is barred by *res judicata*) and *In re A.W.*, 231 Ill. 2d 92, 99 (2008) (applying *de novo* review to the applicability of the collateral estoppel doctrine). Karen asserts that the trial court erred in dismissing her claims on *res judicata* grounds based upon the section 2-1401 summary judgment denying Karen's petition to vacate the judgment of dissolution. Defendants counter that the court correctly dismissed the counts on *res judicata* and collateral estoppel grounds, but that the judgment warranting the dismissal is the dissolution of marriage judgment,

- 10 -

as opposed to the section 2-1401 judgment. We may affirm on any basis supported by the record, regardless of whether the trial court based its decision on a proper ground. *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008).

¶ 33 Defendants' section 2-619(a)(4) motion to dismiss argued that Karen's claims are barred by a prior judgment. "Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). There are three requirements before *res judicata* applies to bar a claim: (1) "a final judgment on the merits rendered by a court of competent jurisdiction"; (2) "an identity of [the] cause[s] of action"; and (3) "an identity of parties or their privies." *Rein v. David A. Noyes & Co.,* 172 Ill. 2d 325, 335 (1996).

¶ 34 While Karen concedes that the judgment for dissolution of her marriage was a final judgment for purposes of the first *res judicata* prong, she contends that there was neither an identity of the cause of action nor of the parties, either of which is fatal to defendants' *res judicata* defense.

¶ 35 In determining whether there is an identity between the causes of action, it is well established that "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 184 Ill. 2d at 311. Moreover, *res judicata* applies "not only to what was actually decided in the original action, but also to matters which could have been decided in that suit." *Rein,* 172 Ill. 2d at 334-35.

¶ 36 Concerning the identity of the cause of action prong, Karen first argues that the divorce case and the instant case are different in critical ways: (1) they involve different causes of action with different elements; (2) she is entitled to a jury trial in the instant case; and (3) she is seeking

compensatory and punitive damages, as well as equitable relief, none of which was available in the divorce action. In support that these distinctions defeat the identity of cause of action requirement of *res judicata*, Karen cites to a line of cases that include *Bank of Northern Illinois v. Nugent,* 223 Ill. App. 3d 1, 15 (1991) (no identity where party seeks different relief and includes additional facts), and *Smith v. Womack's Estate,* 17 Ill. App. 2d 264, 273-74 (1958) (no *res judicata* where all issues not resolved in previous case). This line of cases however, which include what is sometimes referred to as the same evidence test, is no longer applicable in light of our supreme court's adoption of the "transactional test" for determining whether there is identity of causes of action for purposes of *res judicata*. *River Park*, 184 Ill. 2d at 311.

¶ 37    Under the broader transactional test, the cause of action analysis rests on whether the first and subsequent suits arise out of the same operative facts. *Id.* at 310-11. If so, the assertion of different kinds or theories of relief still constitute a single cause of action. In adopting the transactional test, the *River Park* court cited with approval the explanation set forth in the Restatement (Second) of Judgements. *Id.* at 309. The court noted that the same evidence test was tied to the theories of relief asserted by a plaintiff, the result of which is that two claims may be part of the same transaction, yet be considered separate causes of action because the evidence needed to support the theories on which they are based differs. *Id*. at 309 (citing Restatement (Second) of Judgements, § 24, Comment *a*, at 197 (1982)). " 'By contrast, the transactional approach is more pragmatic. Under this approach, a claim is viewed in 'factual terms' and considered 'coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights.' " *River Park*, 184 Ill. 2d at 309 (quoting Restatement (Second) of Judgments § 24, Comment *a*, at 197 (1982)).

¶ 38    In applying the transactional test, we must of course consider the specific allegations in Karen's second amended complaint, which we summarize as follows.  Counts I through IV, which were dismissed with prejudice as to Michael but included in the second amended complaint for purposes of appellate review allege the following:  (1) count I, alleging fraudulent inducement, is premised on Michael's intent to induce Karen to act on his false misrepresentations of his annual compensation through Voyage prior to the judgment of divorce, and Karen's justifiable reliance on Michael's misrepresentations "given the nature of the Divorce proceedings and its attendant discovery and other processes"; (2) count II, alleging fraudulent concealment as an alternative to count I, is premised on Michael concealing a material fact from Karen as to the actual amount of annual compensation to which he was entitled prior to the dissolution judgment, Michael's intent to induce Karen into a false belief that his annual compensation was far less than the amount he represented, and Karen's justifiable reliance on Michael's silence and failure to affirmatively disclose his true annual compensation "given the nature of the Divorce proceedings and its attendant discovery and other processes"; (3) count III, alleging breach of the MSA, as an alternative to counts I and II, is premised on Michael's breach of the representations and warranties of the MSA that he accurately and fully disclosed all income to Karen and had not concealed the same; and (4) count IV, alleging civil conspiracy against Michael and Royce, is premised on Michael and Royce, "through the [True-Up] Scheme," agreeing to accomplish through their concerted actions "the unlawful purpose of under-reporting Michael's income to Karen in the Divorce," and Michael committing "overt tortious acts in furtherance of the [True-up] Scheme, the fraudulent misrepresentation and/or fraudulent concealment as alleged."

¶ 39    We summarize counts V through X against Royce and Voyage as follows.  Counts V and VI, alleging fraudulent misrepresentation and negligent misrepresentation respectively against

Royce, are premised on Royce's misrepresentations of material fact as to the income disparity between Michael and Royce as part of the discovery and valuation process during the divorce. Count VII, alleging fraudulent concealment against Royce, is premised on Royce's concealing that Voyage's growth was in fact increasing, not declining, while participating in the divorce discovery process. Count VIII, alleging conspiracy against Royce, is premised on Royce's and Michael's agreement to under-report Michael's annual compensation during and after the divorce judgment, after which Voyage and Royce would "true-up" Michael to reimburse him for his reduced pre-judgment compensation. Count IX, alleging aiding and abetting against Royce, is premised on Royce aiding Michael in accomplishing a fraud in under-reporting his income to Karen during the divorce to give Karen a false impression as to Michael's actual compensation. Count X, alleging *respondeat superior* against Voyage, is premised on Michael and Royce having acted in the scope of their employment at Voyage while using Voyage as an instrumentality to accomplish the "true-up scheme" during and after the dissolution judgment.

¶ 40    Considering the identity of cause of action under the transactional test, the judgment for dissolution of marriage clearly involved the same operative facts that underlie all of Karen's current claims. Though various of Karen's claims assert additional, post-judgment evidence, this is not dispositive. *River Park*, 184 Ill. 2d at 311 ("the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction"). Nor is it relevant that her various claims seek remedies unavailable in her dissolution action, *i.e.*, attorneys fees and punitive damages. *Id.* at 309 (the claim is viewed in "factual terms" and considered "coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; and regardless of the variations in the evidence

needed to support the theories or rights"). While the dissolution action was pending, Karen alleged in a pretrial memorandum to the court that Michael and Royce colluded to manipulate Michael's income significantly downward so as to reduce maintenance and child support. Despite these concerns, Karen and Michael reached a full settlement on May 13, 2014, agreeing, *inter alia,* to non-modifiable monthly maintenance of $12,500 for a term of 54 months. Their MSA "acknowledged their respective rights to conduct discovery depositions, valuations, request financial information * * * subpoena witnesses to testify and to produce documents[.]" Karen withdrew all her pending subpoenas and discovery requests, including those issued to Royce and Voyage. At the prove-up hearing, both Karen and Michael answered the following question in the affirmative: "Is it your mutual intention to waive all claims of dissipation of assets, concealment of assets, and reimbursement of the marital estate, is that right?"

¶ 41    Thus, it is clear that Karen was aware of and waived the possibility of Michael and Royce's income manipulation as part of the settlement agreement. And her decision to forego this issue directly impacted the MSA which is incorporated into the judgment of dissolution. All the counts of Karen's second amended complaint rely upon the same suspicions she identified to the divorce court in her memorandum when she noted that Michael was manipulating his Voyage income downward. Michael's and Royce's use of Voyage to manipulate Michael's income could have been decided in the dissolution action and potentially have impacted the dissolution judgment had Karen not waived the issue, which is critical because *res judicata* applies "not only to what was actually decided in the original action, but also to matters which could have been decided in that suit." *Rein,* 172 Ill. 2d at 334-35. In that we find that all of Karen's instant claims are premised upon the core operational fact of Michael's and Royce's manipulation of Michael's income, the instant causes of action are the same for purposes of *res judicata.*

¶ 42    Because there is no question that Michael and Karen were otherwise parties in both the dissolution case and the instant case, the identity of party requirement for *res judicata* is clearly satisfied as to all of Karen's counts against Michael.  While Karen does not dispute this prong as it relates to Michael, she argues that Royce and Voyage cannot satisfy *res judicata*'s identity of party prong because they were not privies to Michael in the dissolution proceeding.

¶ 43    For purposes of *res judicata*, "[p]rivity expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties."  (Internal quotation marks omitted.)  *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513 (2010) (quoting Restatement of Judgments § 83, comment a (1982)).  Simply put, privity exists between a party to the prior suit and a nonparty when the party to the prior suit adequately represented the same legal interests of the nonparty.  *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992).

¶ 44    Karen notes that neither Royce nor Voyage were parties to the dissolution action, nor could they have been—only Michael was her husband.  She argues that they could not then possibly be in privity with Michael because they had no legal interests in the dissolution case for Michael to adequately represent.  She argues further that Michael, Royce, and Voyage have potentially divergent interests in the instant litigation as evidenced by all three parties having retained separate attorneys.  See *Cushing v. Greyhound Lines, Inc.,* 2013 IL App (1st) 103197, ¶ 46 (husband and child of woman killed by bus had sufficiently divergent interests that they were not in privity even though the parties continued to exhibit close personal relationship).

¶ 45    However, "[w]ith respect to the doctrine of *res judicata*, there is no generally prevailing definition of 'privity' which can automatically be applied to all cases; that determination requires

a careful examination into all the circumstances of each case." *Purmal v. Robert N. Waddington & Associates,* 354 Ill. App. 3d 715, 722 (2004). During the dissolution proceeding where much of the complained-of conduct occurred, Royce and Michael were co-owners of Voyage. This business relationship persists up to the current time. Before entering into the MSA, Karen sought not only maintenance and child support based upon Michael's and Voyage's income, but one half the value of Michael's interest in Voyage. A careful examination into all the circumstances of each case here leads us to agree with Royce and Voyage that they were privies to Michael as it relates to the questions that Karen initially raised and could have pursued in the dissolution proceeding regarding Royce's collusion with Michael to manipulate his income for purposes of reducing maintenance.

¶ 46    To escape application of the *res judicata* doctrine, Karen cites three Illinois cases where courts of review have permitted civil actions for interspousal torts notwithstanding prior dissolution proceedings. The first two cases do not avail Karen in that the alleged torts were unrelated to the dissolution judgments. *See Vance v. Chandler*, 231 Ill. App. 3d 747 (1992) (civil conspiracy and intentional infliction of emotional distress counts related to husband's plot with daughter to have wife murdered); *In re Marriage of Foran*, 225 Ill. App. 3d 756 (1992) (dissolution court correctly declined to consider claim that spouse transmitted herpes to him seeking money damages as part of dissolution proceeding).

¶ 47    The third case cited by Karen, *Nessler v. Nessler*, 387 Ill. App. 3d 1103 (2008), is closer to the mark. In *Nessler*, the wife's amended and second amended complaints in combination sought money damages proximately caused by the husband's alleged fraud, fraudulent inducement of her execution of an MSA that had been incorporated in an earlier judgment of dissolution, and breach of fiduciary duty—all of which occurred during the pendency of the dissolution proceedings. The

trial court granted the husband's section 2-619 motion to dismiss alleging affirmative matter on the face of the complaint. The affirmative matter alleged was that the wife's cause of action was actually an impermissible attack on the judgment of dissolution in that it was not filed in the dissolution of marriage proceedings, and was not filed in the time-frame required by section 2-1301, 30 days after entry of the final judgment, or section 2-1401, within two years from the date of the entry of the dissolution judgment. *Id.* at 1108.

¶ 48    The appellate court reversed, noting that a party to a divorce who signs an MSA and subsequently proves he or she was fraudulently induced to sign the MSA has a remedy in tort. *Id.* at 1109-10 (citing *In re Marriage of O'Brien,* 247 Ill. App. 3d 745, 750 (a party contending fraudulent inducement in the making of a property settlement agreement incorporated into a decree of dissolution may obtain relief pursuant to section 2-1401)) and *In re Marriage of Hawkins,* 106 Ill. App. 3d 68, 70-71 (1982) (a settlement agreement procured by fraud will be set aside)).  The court further noted that the allegations in the wife's breach of fiduciary duty count were sufficient in that the husband, who was an attorney, engaged in a pattern of conduct that manipulated his self-represented wife to place trust in him such that he gained superiority and influence over her, which he abused. *Nessler*, 387 Ill. App. 3d at 1111.

¶ 49    In dismissing Karen's second amended complaint, the trial court discounted *Nessler* as an "outlier" and declined to follow it because it was inconsistent with well-settled law promoting the finality of judgments. In considering the applicability of *Nessler,* which is admittedly the first and last reported case in Illinois to allow tort claims for divorce-related conduct, we note that whether the *res judicata* doctrine barred the *Nessler* wife's claims was not specifically addressed.  Of course, had *res judicata* been pled as a defense in *Nessler*, given the fiduciary duty issue and the wife's complete ignorance of the fraud in the dissolution case, the *res judicata* defense might have

failed on fairness grounds. *See Piagentini v. Ford Motor Co.,* 387 Ill. App. 3d 887, 890 (2009) (doctrine of *res judicata* will not be applied where it would create inequitable and unjust results). Critically, the *Nessler* wife, unlike Karen, had no knowledge of the fraudulent conduct alleged in her complaint at the time the dissolution judgment was entered. This distinction alone renders Karen's reliance on *Nessler* unavailing.

¶ 50    Karen argues further that the "failure to uncover Michael's and Royce's elaborate fraud during the divorce does not and cannot amount to a waiver of her right to address that fraud now. Otherwise fraud would never be actionable." She cites several other cases in support of her argument that one can attack an MSA based on fraud. See *In re Marriage of Roepenack*; 2012 IL App (3d) 110198; *In re Marriage of Armstrong*, 255 Ill. App. 3d 844 (1993); and *In re Marriage of Gurin*, 212 Ill. App. 3d 806 (1991). However, these cases are inapposite because in each the alleged fraud was discovered after the divorce. Here, Karen alleged there was fraud prior to finalizing the divorce case, yet she proceeded to settle despite her reservations, withdrawing her pending subpoenas and requests for discovery, including those issued to Royce and Voyage. Karen agreed under oath that she was fully informed of Michael's income, assets, and liabilities, and she gave up the right to conduct further discovery before she entered into the MSA. As discussed earlier, even assuming *arguendo* that Karen did not know the full extent of the alleged misconduct, she foreclosed herself from the opportunity of knowing the truth by agreeing to relinquish her rights to pursue it in favor of the settlement. *Cf. In re Marriage of Onishi-Chong*, 202 IL App (2d) 180824, ¶ 46 (for Karen to argue on appeal that she was prevented from continuing discovery and going to trial when she clearly suspected in her MSA that Michael was concealing more money than she knew was "disingenuous.").

¶ 51     To this point, we find instructive *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, which concerned the former wife's 2-1401 petition to vacate the dissolution judgment on the grounds that the husband had fraudulently concealed assets. The parties had agreed to the entry of a judgment of dissolution of marriage that incorporated an MSA in which they acknowledged they engaged in limited discovery. *Id.* In lieu of formal discovery, each party represented and warranted that a full and complete disclosure of his or her property had been made to the other. *Id.* The wife agreed during the prove-up hearing that she entered into the MSA with full satisfaction that the husband disclosed all of his assets and that she relied on this disclosure and that she acknowledged and understood that she could have taken further discovery but chose not to do so. Seeking to vacate the judgment of dissolution, the wife alleged she had discovered the husband concealed three assets worth nearly $2 million. *Id.* ¶ 15.

¶ 52     In affirming the trial court's ruling denying the section 2-1401 petition for lack of due diligence, the *Goldsmith* court noted that "[w]hen a divorce party elects to forego formal discovery in favor of accepting a representation and warranty of full and complete disclosure, the party does so at his or her own peril." *Id.* ¶ 47-50. The *Goldsmith* court held that "to allow the petitioner to proceed with her section 2-1401 petition would give her a second opportunity to do that which should have been done in the initial proceedings." *Id.* at 50. "A representation and warranty of full disclosure in a marital settlement agreement, even when the full disclosure is confirmed by affidavit * * * cannot be used as an escape hatch to avoid the consequences of failing to act diligently in the first instance by engaging in sufficient discovery, a proposition that has been long established in Illinois law. A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations[,]

he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations. [Citations.]" *Id*. ¶ 51.

¶ 53    While *Goldsmith* involved a case concerning lack of due diligence, the same principle applies here. In her pre-trial memorandum, Karen alleged foul play between Michael and Royce, 50% partners in Voyage, and testified in her deposition that she suspected that Michael misrepresented his income from Voyage. Karen had the option to litigate her claim prior to concluding the divorce. Instead, she chose to capitalize on the benefits of a settlement. She was represented by an attorney and knowingly gave up her rights to pursue any claims regarding foul play between Michael and Royce. Now, Karen seeks to circumvent that same agreement through the present second amended complaint at law, which *res judicata* precludes.

¶ 54    While we have determined that all the requirements for the application of *res judicata* are satisfied, we acknowledge, as Karen asserts, that the doctrine should not be applied where doing so would result in inequitable and unfair results. *Piagentini,* 387 Ill. App. 3d at 890. Here, by entering into the MSA notwithstanding her belief that Michael and Royce had colluded to manipulate Michael's income downward, Karen voluntarily chose to forego her proofs, discovery, claims of dissipation and concealment of assets, liabilities, and reimbursement of the marital estate. She did so not under duress, but rather in exchange for an agreement of unallocated family support of $12,500 per month for 54 months. Under all the circumstances of this litigation, the application of *res judicata* in favor of the finality of the dissolution judgment does not yield inequitable or unfair results.

¶ 55    In a final attempt to defeat the application of *res judicata*, Karen points us to the trial court's statement in the section 2-1401 petition litigation where the judge stated: "I don't feel there is any *res judicata* effect here. What happens to [Karen's] pleadings [in the Law Division Case], happens

to her pleadings[.]" Noting that *res judicata* is inapplicable "where the court in the earlier action expressly reserved the plaintiff's right to maintain the second action," she asserts the trial court erred in dismissing her second amended complaint. See *Airtite v. DPR Ltd. Partnership*, 265 Ill. App. 3d 214, 219 (1994) (*res judicata* does not apply to bar an independent claim of part of the same cause of action if the court in the first action expressly reserves plaintiff's right to maintain second action because of a restriction of the subject-matter jurisdiction of the court in the first action). While it is not entirely clear that the relied upon statement of the trial judge was intended to reserve Karen's right to pursue her second amended complaint, we need not decide this question. Our *res judicata* analysis is premised upon the judgment of dissolution and not the summary judgment in Karen's 2-1401 petition. Karen does not argue that the trial court in the dissolution action preserved any of her instant claims.

¶ 56    We find the trial court correctly applied the doctrine of *res judicata* in dismissing all the counts of Karen's second amended complaint on defendants' section 2-619 motion. Based on our finding, we need not address whether the trial court properly dismissed the second amended complaint on grounds of collateral estoppel or waiver, or whether Karen pleaded sufficient facts to survive a section 2-615 motion to dismiss.

¶ 57            B. Denying Leave to Supplement the Second Amended Complaint

¶ 58    Lastly, Karen argues that the trial court abused its discretion by denying her leave to supplement the second amended complaint with the following three counts: (1) spoliation of evidence against all defendants, including Michael; (2) unjust enrichment against Royce and Voyage; and (3) fraudulent conveyance under the Uniform Transfer Act (UFTA) against Royce and Voyage. In their objection to Karen's request to amend her complaint to add the additional counts, defendants argued that the proposed amendment should be denied because it would not

cure what they claimed was a fatal defect to the complaint, to wit, the applicable *res judicata* bar. See *Loyola Academy v. S & S Roof Maintenance Inc.,* 146 Ill. 2d 263, 273 (1992) (factors for allowing amendment to complaint include whether the proposed amendment would cure a defective pleading). While the trial court denied leave to amend because it found the counts as alleged failed to state cognizable claims, we can affirm the trial court's decision on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground. *In re Marriage of Gary*, 348 Ill. App. 3d at 987. We conclude that the trial court did not abuse its discretion in denying plaintiff's motion to supplement her complaint because, just as with the filed counts as explained above, the supplemental counts were similarly barred by application of the *res judicata* doctrine.

¶ 59                                III. CONCLUSION

¶ 60    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 61    Affirmed.